UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HUDSON NEUROSURGERY, PLLC,

*Plaintiff*,

v.

ARCHDIOCESE OF NEW YORK,

*Defendant*.

No. 24-CV-3489 (KMK)

<u>ORDER & OPINION</u>

<u>Appearances</u>:

Richard A. Hochhauser, Esq.
Law Office of Richard Hochhauser, PLLC
Garden City, NY
*Counsel for Plaintiff*

Barry I. Levy, Esq.
Brian L. Bank, Esq.
Rivkin Radler, LLP
Uniondale, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

 Hudson Neurosurgery, PLLC, ("Plaintiff") brings this Action against the Archdiocese of New York ("Defendant"), alleging an unjust enrichment claim related to Plaintiff's performing surgery on an individual ("Patient") who was an eligible dependent under a healthcare plan sponsored by Defendant.  (*See generally* Compl. (Dkt. No. 1-1).)  Before the Court is Defendant's Motion for Summary Judgment (the "Motion").  For the reasons discussed below, the Motion is granted in part and denied in part.

I.  Background

A.  Factual Background

The following facts are taken from the Parties' statements pursuant to Local Rule 56.1,

(Def's 56.1 Statement ("Def's 56.1") (Dkt. No. 31); Pl's Response to Def's 56.1 Statement ("Pl's

56.1 Resp.") (Dkt. No. 38); Pl's Statement of Additional Material Facts ("Pl's 56.1") (Dkt. No.

38); Def's Response to Pl's Statement of Additional Material Facts ("Def's 56.1 Resp.") (Dkt.

No. 41)), and admissible evidence.[1]  The facts below are undisputed unless otherwise noted.

Plaintiff is a private medical practice specializing in neurosurgery that is out-of-network

with all insurers except Medicare and has a single practicing physician, Dr. Haroon F. Choudhri

("Dr. Choudhri").  (Def's 56.1 ¶¶ 1–3.)  At all relevant times, Patient was insured as an eligible

dependent under a Group Health Plan sponsored by Defendant.  (*Id.* ¶ 4.)

In 2017, Patient was involved in a car accident that caused chronic intermittent neck pain.

(Levy Decl., Ex. E ("Ifudu Notes") (Dkt. No. 29-2) at ECF 6.)  On March 24, 2021, Patient

elected to proceed to surgery after having a consultation with Dr. Choudhri and discussing

surgical and nonsurgical options to relieve his complaints of neck and right shoulder pain.  (*Id.*

¶¶ 5–7.)  At Dr. Choudhri's instruction, Plaintiff's manager, Saima Choudhri, scheduled the

---

[1] As Defendant notes, Plaintiff's Statement of Additional Materials Facts fails to comply with Local Civil Rule 56.1.  Plaintiff's paragraphs do not contain "separate, short[,] and concise statement[s]," Loc. Civ. R. 56.1(b), but rather include multiple statements in individual paragraphs.  Defendant has done the work of splitting Plaintiff's lengthy paragraphs into individual statements.  (*See generally* Def's 56.1 Resp.)  The Court will overlook Plaintiff's failure here but cautions Plaintiff that compliance with local rules is not optional.

Separately, the Court notes that deposition transcript excerpts submitted by Defendant do not have page numbers, thereby requiring the Court hunt through the excerpts to ensure that proposed undisputed facts are, in fact, supported by the record.  (*See* Decl. of Barry I. Levy ("Levy Decl."), Exs. G, H, I, J (Dkt. Nos. 29-4 to -7).)  The Court suggests that counsel double-check their filings in the future.

surgery for March 26, 2021, and requested prior authorization for the surgery from

UnitedHealthcare, Patient's insurer. (*Id.* ¶¶ 10–11.) UnitedHealthcare denied the authorization

on the grounds that Plaintiff was an out-of-network healthcare provider and Patient did not have

out-of-network benefits. (*Id.* ¶ 11; *see also* Levy Decl., Ex. M (Dkt. No. 29-10) (a letter dated

March 26, 2021, from UnitedHealthcare explaining the denial).)

By faxed letter dated March 25, 2021, Plaintiff appealed the denial, stating that the

surgery was "in the best interest of the patient . . . as he is in severe, unrelenting pain and is

losing upper extremity function." (Def's 56.1 ¶ 12 (alterations omitted); Levy Decl., Ex. K (Dkt.

No. 29-8) at ECF 2.) The appeal did not mention suicidal ideation on the part of Patient. (Def's

56.1 ¶ 13.) At unspecified times, the March 26, 2021, surgery was cancelled and Plaintiff's

appeal was denied. (*Id.* ¶ 12.)

At an unspecified time on March 25, 2021, Patient was admitted to St. John's Riverdale

Hospital. (*See* Def's 56.1 ¶ 17; Levy Decl., Ex. D ("Lee Notes") (Dkt. No. 29-1) at ECF 3.) At

approximately 10:51 PM, Dr. Eliott Lee ("Dr. Lee") examined Patient. (*See* Lee Notes at ECF

3–6).) At approximately 12:19 AM on March 26, 2021, Dr. Onyekachi Ifudu ("Dr. Ifudu")

examined Patient. (*See* Ifudu Notes at ECF 3–5.) Dr. Ifudu saw Patient again at approximately

1:22 AM. (*See id.* at ECF 6–10.) At approximately 9:33 AM, Dr. Iyad Annabi ("Dr. Annabi")

examined Patient. (*See* Levy. Decl., Ex. F ("Annabi Notes") (Dkt. No. 29-3) at ECF 4–6.) Some

time after Dr. Annabi's examination, Dr. Choudhri met with Patient. (Def's 56.1 ¶ 22.)

Dr. Choudhri and Patient discussed Patient's options, including medication, surgery performed

by Dr. Choudhri, or surgery performed by another doctor. (*See* Levy Decl., Ex. G ("Choudhri

Dep. Tr.") at ECF 25:3–27:18; *see also* Decl. of Richard Hochhauser ("Hochhauser Decl."), Ex.

E ("Choudhri Pre-Surgery Rpt.") (Dkt. No. 37-5).) Dr. Choudhri then performed cervical surgery on Patient with his consent. (Pl's 56.1 ¶ 42.)

Some time after the surgery, Plaintiff submitted claims totaling $498,842 to UnitedHealthcare. (Def's 56.1 ¶ 26.) On November 15, 2021, Plaintiff executed a Single Case Agreement ("SCA") with Medical Audit & Review Solutions ("MARS"), a third-party. (Levy Decl., Ex. N (Dkt. No. 29-11).) On November 30, 2021, UnitedHealthcare paid Plaintiff $29,116.67. (*See* Def's 56.1 ¶ 30; Levy Decl., Ex. O ("Provider Remittance Advice") (Dkt. No. 29-12).)

B.  Procedural Background

On March 25, 2024, Plaintiff initiated this Action in Westchester County Supreme Court. (*See* Not. of Removal (Dkt. No. 1).) On May 6, 2024, Defendant removed this Action to the Southern District of New York. (*Id.*) On January 15, 2025, the Court adopted a briefing schedule for the instant Motion. (Dkt. No. 22.) On February 18, 2025, Defendant filed the instant Motion. (*See* Not. of Mot. (Dkt. No. 27); Def's Mem. in Supp. ("Def's Mem.") (Dkt. No. 30); Def's 56.1.) On March 11, 2025, Plaintiff filed its Opposition. (*See* Pl's Mem. in Opp. ("Pl's Opp.") (Dkt. No. 36); Pl's 56.1 Resp.; Pl's 56.1.) On March 21, 2025, Defendant replied. (*See* Def's Reply Mem. in Supp. ("Def's Reply") (Dkt. No. 43); Def's 56.1 Resp.)

On April 3, 2025, the Court ordered supplemental briefing on the issue of contract formation. (*See* Dkt. No. 44.) On April 17, 2025, the Parties responded. (*See* Def's Suppl. Br. ("Def's Suppl.") (Dkt. No. 45); Pl's Suppl. Br. ("Pl's Suppl.") (Dkt. No. 46).)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same); *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In deciding whether to award summary judgment, the court must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021); *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same).  "It is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration, citation, and quotation marks omitted).  Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

5

U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharms. Tech. Corp. v. Barr Lab'ys Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323–24).

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding

"statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (citation omitted)).

B.  Analysis

An unjust enrichment claim is a "New York common law quasi-contract cause of action requiring the plaintiff to establish: '(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution.'" *Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)). "Notably, '[u]nder New York law, a plaintiff may not recover under quasi-contract claims such as unjust enrichment where an enforceable contract governs the same subject matter.'" *Hudson Neurosurgery, PLLC v. UMR, Inc.*, No. 20-CV-9642, 2023 WL 6311218, at *6 (S.D.N.Y. Sept. 28, 2023) (quoting *Goldberg v. Pace Univ.*, 535 F. Supp. 3d 180, 198 (S.D.N.Y. 2021)).

Defendant moves for summary judgment on the grounds that the SCA bars Plaintiff's claim for unjust enrichment, (Def's Mem. 11–13), and that Plaintiff's surgery was elective and non-emergent, rendering the Emergency Medical Treatment and Labor Act ("EMTALA") inapplicable, (*id.* 13–19). The Court addresses each in turn.

1.  Contract

"The question of whether a binding agreement exists is generally a legal question for the court to decide." *Hudson Techs., Inc. v. RGAS, LLC*, 716 F. Supp. 3d 327, 332 (S.D.N.Y. 2024) (quotation marks omitted) (quoting *Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.*, 578 F. Supp. 3d 467, 486–87 (S.D.N.Y. 2022)). "Where the parties' intention to form a contract is

discernible by written agreements alone[, i.e., is unambiguous], 'the question is one of law, appropriately decided . . . on a motion for summary judgment.'" *Alessi Equip.*, 578 F. Supp. 3d at 487 (quoting *Mallad Constr. Corp. v. Cnty. Fed. Sav. & Loan Ass'n*, 32 N.Y.2d 285, 344 (N.Y. 1973)); *N. Am. Photon Infotech Ltd. v. ZoomInfo LLC*, No. 22-1979, 2024 WL 4799843, at *1 (2d Cir. Nov. 15, 2024) (summary order) ("When the terms of a contract are unambiguous, summary judgment may be granted so long as there are not genuine disputed issues of material fact relevant to performance, breach or damages." (citing *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992))).  "Ambiguity exists where a contract's terms are subject to more than one reasonable interpretation." *Ezrasons, Inc. v. Travelers Indem. Co.*, 89 F.4th 388, 395 (2d Cir. 2023) (alterations adopted) (internal quotation marks and citations omitted).  If, however, the contract is ambiguous or the parties' intent cannot be determined from the terms of the agreement itself and requires reference to disputed evidence or inferences outside the four corners of the agreement, then there exists a factual dispute that precludes summary judgment. *See Alessi Equip.*, 578 F. Supp. 3d at 488 ("[I]n the event that ambiguity exists and its resolution . . . hinges on such extrinsic matters as the credibility of witnesses or documents or upon choosing one among several reasonable inferences that may be drawn from such extrinsic evidence, a jury, and not a court, should generally decide what meaning is to be ascribed to the contract." (alterations adopted) (internal quotation marks and citations omitted)).  For a contract to form, there must be "a meeting of the minds and a manifestation of mutual assent."  *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019) (quotation marks omitted) (quoting *Express Indus. & Terminal Corp. v. N.Y. Dep't of Transp.*, 715 N.E.2d 1050, 1053 (N.Y. 1999)).

> The manifestation of mutual assent must be sufficiently definite to assure that the parties are truly in agreement with respect to all material terms. . . .  Generally, courts look to the basic elements of the offer and the acceptance to determine

> whether there was an objective meeting of the minds sufficient to give rise to a
> binding and enforceable contract.

*Id.* at 289 (internal citations omitted); *see also* 22 N.Y. Jur. 2d Contracts § 9 ("To establish the

existence of an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer,

consideration, mutual assent, and an intent to be bound.").

The Court starts, with the agreement in question, the SCA, which states in its entirety:

> Pursuant to our recent conversation, by signing below, Hudson Neurosurgery PLLC
> ("Provider") agrees to:  (i) accept the Proposed Amount (less deductible, co-
> insurance, co-payment or other patient responsibility or non-covered services as
> defined by the plan) as payment in full for claims/bills from plans serviced by
> MultiPlan that are submitted by Payor/Client and determined to be eligible for the
> services rendered-to the Patient on the dates fisted above; (ii) not to balance bill the
> Patient for the difference between the Amount of the Claim/Bill and the Proposed
> Amount; and (iii) reduce the liability of the Patient and Payor/Client.
> By signing below, the Provider agrees and acknowledges that; (i) MARS and
> MultiPlan are not payors or agents of any payor, and are not financially responsible
> for any payments due to the Provider; (ii) the payment of benefits, if any, is subject
> to the terms and conditions of the Patient's plan; and (iii) this does not constitute,
> nor should it be construed as a guarantee of benefit payment by the Payor/Client.
> These Negotiation Terms will be null and void if products/services are determined
> to be non-compensable, if Payor does not accept these Negotiation Terms, or if
> policy limit has been exceeded.  Provider retains the right to bill the Patient (or
> financially responsible party) for items not covered under the Patient's benefit plan.

(SCA.)  Applying the terms of the SCA, the Proposed Amount is $98,320, the Billed Charges

amount is $498,842, and the Payor is "UnitedHealthcare, on behalf of itself and its ASO

customers and affiliate payors."  (*Id.*)

The Court concludes as a matter of law that Plaintiff and UnitedHealthcare entered into a

binding contract.  The contract is not ambiguous—it is clear that Plaintiff agreed to accept up to

$98,320, "less deductible, co-insurance, co-payment, or other patient responsibility or non-

covered service," in exchange for Plaintiff to not bill Patient for the balance and "reduce the

liability of the Patient and [UnitedHealthcare]."  (SCA.)  Upon Plaintiff's executing the SCA on

November 15, 2021, the negotiated terms became an offer that was transmitted to

UnitedHealthcare.  The SCA itself contemplates that it constitutes "Negotiation Terms" that UnitedHealthcare can accept.  (*See id.*)  UnitedHealthcare then accepted the contract by tendering an amount pursuant to the SCA on November 30, 2021.  (Def's 56.1 ¶ 30.)  *See* Restatement (Second) of Contracts § 62(a) (1981) ("Full performance . . . constitutes a reasonable mode of acceptance.").

Plaintiff makes a number of arguments aimed at disputing contract formation, all of which are unavailing.[2]  Plaintiff disputes that the SCA provided reimbursement for "up to" $98,320 and asserts that "[the SCA] states Plaintiff agrees to 'accept the Proposed Amount' which is explicitly defined in the agreement as '$98,320.00.'"  (*See* Pl's 56.1 Resp. ¶ 27.)  This is a misreading of the SCA.  Plaintiff omits the crucial language here, that it would "accept the Proposed Amount *(less deductible, co-insurance, co-payment or other patient responsibility or non-covered services as defined by the plan)*."  (SCA (emphasis added).)

Plaintiff also argues that there was no "mutuality of obligation," or that neither party was bound, meaning that the SCA is not an enforceable contract.  (Pl's Opp. 5–6.)  This reads as an argument that there was no consideration, as a "'mutuality' requirement" is actually "[an] inquiry . . . of consideration:  whether 'something is promised, done, forborne, or suffered by [a party] . . . as consideration for the promise made to him.'"  *WCA Holdings III, LLC v. Panasonic Avionics Corp.*, 704 F. Supp. 3d 473, 495 (S.D.N.Y. 2023) (quoting *Dan-Bunkering (Am.), Inc. v. Technologias Relacionadas con Energia y Servicios Especializa*, No. 17-CV-9873, 2020 WL

---

[2] Plaintiff asserts that Defendant had a "pre-existing duty" to pay Plaintiff, thereby rendering the contract unenforceable because a pre-existing duty cannot form the basis for valid consideration.  (Pl's Opp. 7.)  The Parties dispute whether Patient's surgery to address Patient's medical condition was elective or emergent; if it was emergent, there would be a legal duty to pay reasonable rates.  (*See* Pl's 56.1 Resp. ¶ 18; Def's Mem. 7–10.)  The Court addresses this issue below.  *See infra* Section II.B.2.

3893281, at *7 (S.D.N.Y. July 10, 2020)).  Here, UnitedHealthcare agreed to pay up to $98,320, and in return Plaintiff agreed "not to balance bill the Patient" and "reduce the liability of the patient and Payor/Client."  (SCA.)  These promises clearly constitute consideration.  *See Annabi v. N.Y. Univ.*, No. 22-CV-3795, 2024 WL 4252062, at *13 (S.D.N.Y. Sept. 20, 2024) ("Consideration is simply a bargained-for exchange of promises or performance." (quoting *Ferguson v. Lion Holdings*, 312 F. Supp. 2d 484, 494 (S.D.N.Y. 2004))).  In any case, "courts will rarely, if ever, investigate the adequacy of the consideration exchange."  *Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 86 (S.D.N.Y. 2021) (quotation marks omitted) (quoting *Dan-Bunkering*, 2020 WL 3893281, at *7).

Plaintiff also asserts, albeit obliquely, that the contract is illusory, and therefore unenforceable.  (*See* Pl's Opp. 5–6.)  A contract is illusory when "one party gives as consideration a promise that is so insubstantial as to impose no obligation."  *Gibraltar Home Improvements, Inc. v. Rockingham Ins. Co.*, No. 22-CV-1805, 2024 WL 4287227, at *14 (E.D.N.Y. Sept. 25, 2024) (quoting *Lend Lease (US) Const. LMB Inc. v. Zurich Am. Ins. Co.*, 71 N.E.3d 556, 562 (N.Y. 2017)).  "[A]n interpretation that renders a contract illusory and therefore unenforceable is disfavored . . . particularly where . . . the parties have expressed their intent to be contractually bound in a writing."  *WCA Holdings*, 704 F. Supp. 3d at 495 (quoting *Credit Suisse First Bos. v. Utrecht-Am. Fin. Co.*, 915 N.Y.S.2d 531, 535 (N.Y. App. Div. 2011)).  Here, that UnitedHealthcare's promise is conditioned on an event within its control does not render the promise illusory.  *See* Restatement (Second) of Contracts § 76 (1981) ("[A] promise may be conditional on an event within the control of the promisor.  Such a promise may be consideration if he has also promised that the condition will occur.").  Even assuming that the contract was illusory because there was a lack of consideration, the "lack of consideration can be remedied by

11

the subsequent conduct of the parties." *WCA Holdings*, 704 F. Supp. 3d at 495 (citing *Faust Harrison Pianos Corp. v. Allegro Pianos, LLC*, No. 09-CV-6707, 2013 WL 2292050, at \*11 (S.D.N.Y. May 24, 2013)).  While it could be argued that the price term was so insubstantial as to impose no obligation, the Parties' subsequent conduct, particularly UnitedHealthcare's tendering payment and Plaintiff's acceptance of the same, remedies any hypothetical lack of consideration.  *See Aquavit Pharm., Inc. v. U-Bio Med, Inc.*, No. 19-CV-3351, 2020 WL 832249, at \*3–5 (S.D.N.Y. Feb. 19, 2020) (finding that the parties' subsequent conduct cured any lack of mutuality); *Ferugson v. Ferguson*, 470 N.Y.S.2d 715, 716 (N.Y. App. Div. 1983) (finding that subsequent conduct, namely the payment of expenses pursuant to the agreement, remedied any lack of mutuality of obligation).

      Plaintiff next argues that there is no contract because there are "several layers of indefiniteness as it related to the amount that was purposed [sic] to be paid to Plaintiff."  (Pl's Opp. 6.)  "[T]he definiteness requirement should not be applied rigidly, and a court simply looks to whether 'it is able to determine what in fact the parties have agreed to.'"  *WCA Holdings*, 704 F. Supp. 3d at 497 (quoting *Matter of 166 Mamaroneck Ave. Corp. v. 151 E Post Rd. Corp.*, 575 N.E.2d 104, 105 (N.Y. 1991)).  Relevant here, "all terms contemplated by [an] agreement need not be fixed with complete and perfect certainty for a contract to have legal efficacy."  *Id.* (quoting *Kolchins v. Evolution Mkts., Inc.*, 8 N.Y.S.3d 1, 10 (N.Y. App. Div. 2015)).  "[A] price term is not necessarily indefinite because the agreement fails to specify a dollar figure, or leaves fixing the amount for the future, or contains no computational formula."  *Marcus v. Lominy*, No. 18-CV-1857, 2022 WL 493688, at \*9 (S.D.N.Y. Feb. 17, 2022) (quoting *Cobble Hill Nursing Home v. Henry & Warren Corp.*, 548 N.E.2d 203, 206 (N.Y. 1989)).  Plaintiff argues that the payment term "is far from reasonably certain, given that it is subject to third-party

determinations and undefined conditions." (Pl's Opp. 6.) This is an interpretation divorced from the text of the SCA. On the contrary, UnitedHealthcare is not some mysterious third-party, but rather is the other party to the contract. As for the conditions, they are clearly defined—the payment amount is contingent upon the determination of costs for which Patient is responsible and of non-covered services. Accordingly, the price term is sufficiently definite because it is "defined by reference to . . . subsequent conduct of the parties." *Seton Health at Schuyler Ridge Residential Health Care v. Dziuba*, 6 N.Y.S.3d 750, 752 (N.Y. App. Div. 2015); *see also Blue v. Zucker*, 145 N.Y.S.3d 732, 738 (N.Y. App. Div. 2021) (finding that price terms in a contract were not indefinite where they "could be defined by reference to the Medicaid rates as determined by that program based on petitioner's eligibility and circumstances . . . .").

Finally, Plaintiff argues that the contract is unenforceable because Defendant is not a party to the SCA. (Pl's Opp. 5.) Plaintiff does not elaborate on this point. In any case, Defendant's being a party to the SCA is not necessary to grant it summary judgment because "claims for unjust enrichment may be precluded by the existence of a contract governing the subject matter of the dispute even if one of the parties to the lawsuit is not a party to the contract." *Thor 680 Madison Ave. LLC v. Qatar Luxury Grp. S.P.C.*, No. 17-CV-8528, 2022 WL 836890, at *10 (S.D.N.Y. Mar. 21, 2022) (alteration adopted) (quoting *Am. Med. Ass'n v. United Healthcare Corp.*, No. 00-CV-2800, 2007 WL 683974, at *10 (S.D.N.Y. Mar. 5, 2007)).

The existence of a contract would normally bar Plaintiff's claim. *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) ("New York law does not permit recovery in [unjust enrichment], however, if the parties have a valid, enforceable contract that governs the same subject matter as the [unjust enrichment] claim.") However, Plaintiff asserts that its unjust enrichment claim survives because it was

compelled to provide emergency services under EMTALA, which the Court will turn to next.

(*See* Pl's Opp. 8.)

    2.  EMTALA

Under EMTALA, if an individual comes to a hospital "and the hospital determines that the individual has an emergency medical condition," then the hospital must either stabilize the individual's medical condition or transfer the individual to another medical facility.  42 U.S.C. §§ 1395dd(b)(1)(A)–(B).  An emergency medical condition is

> a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—(i) placing the health of the individual . . . in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part.

*Id.* § 1395dd(e)(1)(A).  EMTALA is interpreted to require that medical providers "provide emergency care to patients without regard to insurance."  *Jay Kripalani M.D., P.C. v. Indep. Blue Cross*, No. 23-CV-4225, 2024 WL 4350492, at *7 (E.D.N.Y. Sept. 30, 2024).  In 2011, a New York trial court concluded, in "an apparent case of first impression" concerning Medicare patients and a hospital, that where "a hospital is required by law to treat patients in an emergency room, an insurance company is unjustly enriched if it fails to pay the hospital in full for the costs incurred in rendering the necessary treatment to the insurer's enrollees."  *N.Y.C. Health & Hosps. Corp. v. Wellcare of New York, Inc.*, 937 N.Y.S.2d 540, 543, 545 (N.Y. Sup. Ct. 2011).  If, however, the medical service provided is not emergent but elective, then an unjust enrichment claim can only lie if it is directed at the patient and not some third-party.  *See Rowe Plastic Surgery of New Jersey, L.L.C. v. Aetna Life Ins. Co.*, No. 23-8083, 2024 WL 4315128, at *4 (2d Cir. Sept. 27, 2024) (summary order) (holding, on a claim for unjust enrichment stemming from an elective surgery, that the plaintiff medical provider "must recover from the patient, not [the defendant medical insurer]" (citing *Kagan v. K-Tel Ent., Inc.*, 568 N.Y.S.2d 756, 757 (N.Y. App.

14

Div. 1991))); *see also AA Med., P.C. v. Centene Corp.*, No. 21-CV-5363, 2023 WL 5670682, at *4 (E.D.N.Y. June 30, 2023) (noting that "New York courts have drawn a clear distinction between unjust enrichment cases involving emergency medical services, and those involving elective medical services"), *report and recommendation adopted*, Dkt. 21-CV-5363, minute entry (E.D.N.Y. July 18, 2023). In considering the precedential impact of *Wellcare*, some courts have "distinguished circumstances involving private physicians, rather than a hospital, and when Medicare patients are not involved." *Brain & Spine Surgeons of New York, P.C. v. Triple-s Salud Inc.*, No. 22-CV-8951, 2024 WL 4150103, at *6 (S.D.N.Y. Sept. 11, 2024) (collecting cases). The court in *Emergency Physician Services of New York v. UnitedHealth Group, Inc.*, 749 F. Supp. 3d 456 (S.D.N.Y. 2024), however, examined the *Wellcare* decision and subsequent caselaw and reasoned that *Wellcare*'s holding applied where "a hospital is required by law to treat patients in an emergency room, an insurance company is unjustly enriched if it fails to pay the hospital in full for the costs incurred in rendering the necessary treatment to the insurer's enrollees," regardless of the patient's insurer or whether the medical provider was a hospital or private physician. *Id.* at 472–73. The *Emergency Physician* court reasoned that "*Wellcare*'s holding is . . . consistent with the Restatement (Third) of Restitution and Unjust Enrichment, which New York courts look to when confronted with unjust enrichment claims" and held that the Restatement and *Wellcare*'s holding were both applicable because they "are rooted in the theory that the plaintiff['s] provision of emergency medical care discharged the defendants' obligation . . . ." *Id.* at 474. The Court finds the *Wellcare* court's reasoning persuasive and that the *Wellcare* holding applies here.

For their part, the Parties seem to assume the above is settled law and jump straight to whether Patient's surgery was elective or emergent. (*See* Def's Mem. 13–19; Pl's Opp. 8–12.)

And for good reason—if Plaintiff's surgery was elective, then EMTALA did not compel the surgery and the unjust enrichment claim cannot be sustained against Defendant, and if the surgery was emergent, then EMTALA applies and the unjust enrichment claim may proceed.[3]

The Parties sharply dispute whether the surgery was elective or emergent. Defendant asserts that Plaintiff was stable and was not in an emergency condition, (*see* Def's 56.1 ¶¶ 17–19; Def's Mem. 15), while Plaintiff asserts that "Patient was facing a 'bona fide emergency,'" (Pl's 56.1 ¶ 41; Pl's Opp. 9). This dispute is sufficient to preclude summary judgment. *See Waldrup v. Mueller*, No. 18-CV-354, 2020 WL 6276844, at *5 (D.S.C. Feb. 10, 2020) (finding that the question of whether treatment of plaintiff's condition was elective or emergent precluded summary judgment), *report and recommendation adopted*, 2020 WL 4670621 (D.S.C. Aug. 11, 2020).

Defendant's arguments to the contrary fail to carry the day. First, Defendant points to the affidavits of other doctors who examined Patient and did not determine that he had an emergency medical condition. (Def's Mem. 15, 17.) But the existence of this evidence does not establish as a matter of law that Plaintiff did not have an emergent medical condition, given Dr. Choudhri's opinion that Patient "was in clear need of relief and multiple attempts at non-operative management spread over several ED visits were insufficient to palliate his pain." (Choudhri Pre-Surgery Rpt. 3.) Dr. Choudhri also testified that he observed Patient "rolling around crying in pain" and "[w]ith a dead right arm." (Hocchauser Decl., Ex. A (Dkt. No. 37-1) at ECF 32:11–21.) Defendant next argues that Dr. Choudhri's opinion cannot create a dispute of material fact.

---

[3] The Court notes that it has found no caselaw in which a medical provider has pursued an unjust enrichment claim against a medical healthcare plan sponsor, as opposed to the insurer. The Parties do not address this issue. The Court assumes, without deciding, that a plan sponsor may be found liable under these circumstances.

(*Id.* 15–17.)  The cases that Defendant cites are inapposite, as they involve affidavits or reports that were found to not create a dispute of material fact because they "directly contradicted or [were] unsupported by the evidence."  (*Id.* 16.)  Here, however, Dr. Choudhri's opinion is not wholly unsupported by the record; indeed, a reasonable jury could find the record indicates that Plaintiff was experiencing a medical emergency.  Contrary to Defendant's assertion, it is not the case that "the only conclusion that is warranted is that the surgery was voluntary and elective." (Def's Reply 10.)  At bottom, the record is susceptible to both Parties' interpretations as to Patient's medical condition, thereby precluding summary judgment on this ground.  *Cf. Aitken v. Aetna Life Ins. Co.*, No. 16-CV-4606, 2018 WL 4608217, at *21 (S.D.N.Y. Sept. 25, 2018) (denying summary judgment because "determining whether [p]laintiff is disabled based on his alleged need to avoid stress will require weighing physicians' competing opinions"); *see also Villetti v. Guidepoint Global LLC*, No. 21-2059, 2022 WL 2525662, at *7 (2d Cir. July 7, 2022) (summary order) ("[A]ny . . . competing reasonable inferences in the record, including any credibility assessments of the witnesses necessary to evaluate such inferences, cannot be resolved on summary judgment."); *Shepard v. Wo Hop City, Inc.*, No. 18-CV-9634, 2021 WL 4267527, at *8 (S.D.N.Y. Sept. 20, 2021) (denying summary judgment because "the [c]ourt cannot choose between . . . competing inferences at the summary judgment stage"); *Sigal v. Metro. Life Ins. Co.*, No. 16-CV-3397, 2018 WL 1229845, at *12 (S.D.N.Y. Mar. 5, 2018) ("[W]hen faced with a conflict between two potentially credible physician's reports, neither party is entitled to summary judgment . . . .").

## III.  Conclusion

For the reasons set forth above, the Motion is denied in part and granted in part.  The Clerk of Court is respectfully directed to amend the docket to reflect the correct spelling of

Defendant's name in the above caption.  The Court will hold a telephonic status conference on

October 9, 2025, at 2:30 PM.  Dial-in information can be found in the Court's Individual Rules.

SO ORDERED.

Dated:    September 23, 2025
         White Plains, New York

_____
    KENNETH M. KARAS
    United States District Judge